**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JORGE COLON | : | |
| | : | |
| Appellant | : | No. 1952 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 17, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006281-2016

BEFORE:   SHOGAN, J., LAZARUS, J., and COLINS, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED JUNE 15, 2020**

Appellant, Jorge Colon, appeals from the judgment of sentence following a bench trial and convictions for aggravated assault, simple assault, terroristic threats, recklessly endangering another person ("REAP"), and possessing instruments of crime ("PIC").[1]  Appellant's counsel filed a petition to withdraw per **_Anders v. California_**, 386 U.S. 738 (1967).  We affirm and grant counsel's petition to withdraw.

On June 12, 2016, Kevin Clark ("Clark") and Joe Connelly ("Connelly") were sitting on a step at the corner of Harold and Thompson Streets in Philadelphia.  N.T., 12/8/16, at 13.  Appellant approached them and punched

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a), 2701(a), 2706(a)(1), 2705, and 907(a), respectively.

Connelly four times with a closed fist, after which Clark and Connelly attempted to walk away. *Id*. at 12. When Clark, an elderly disabled man, asked Appellant to leave them alone, Appellant punched Clark at least thirty to forty times. *Id.* at 14–15. As neighbors intervened to restrain Appellant, he yelled, "I'll shoot him, I'll shoot him," and placed his hand inside his satchel. *Id.* at 17.

One neighbor, Michael Fenerty ("Fenerty"), heard the commotion, went outside and witnessed Appellant beating Clark. N.T., 12/8/16, at 41. Fenerty told Appellant to leave Clark alone and then grabbed Appellant's arm. *Id.* at 42. Appellant screamed at Fenerty that he was going to kill him but began walking away. *Id.* at 43.

Believing that the altercation was over, Fenerty returned to his house, put on a pair of jeans and shoes, and went outside to wait for the police. N.T., 12/8/16, at 45. Appellant then charged toward Fenerty with an aluminum baseball bat. Appellant struck Fenerty four times with the bat. Fenerty shielded himself with his arms, suffering injuries to his arm and elbow. *Id.* at 45–46. Appellant fled when the police arrived. Two police officers pursued Appellant and apprehended him. *Id.* at 80.

Fenerty testified that his arm was red and purple the next morning and that its condition worsened in the ensuing days. N.T., 12/8/16, at 53–54. Later in the week, Fenerty went to an emergency room where an X-ray

revealed deep bruising in the arm and his elbow had to be drained on two occasions. *Id.* at 54.

Following a bench trial on December 8, 2016, the trial court found Appellant guilty of aggravated assault, simple assault, terroristic threats, REAP, and PIC. On February 17, 2017, the court sentenced Appellant to an aggregate term of five to ten years of imprisonment followed by five years of probation.

Appellant did not file a post-sentence motion or a direct appeal. However, on August 9, 2017, Appellant filed a *pro se* petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*, seeking reinstatement of his right to file a direct appeal and/or post-sentence motions *nunc pro tunc*. The trial court granted Appellant leave to file a direct appeal *nunc pro tunc*, but denied Appellant's request to file post-sentence motions *nunc pro tunc*. On the same day, the trial court granted PCRA counsel's leave to withdraw and appointed present counsel, James Lloyd, Esquire, to represent Appellant with respect to the *nunc pro tunc* direct appeal.

Appellant filed a timely direct appeal *nunc pro tunc*. On July 31, 2019, appointed appellate counsel filed a statement pursuant to Pa.R.A.P. 1925(c)(4) of notice of intent to file a brief pursuant to **Anders** and **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981) and a petition to withdraw. The trial court did not issue a Rule 1925(a) opinion, but instead forwarded the certified record to this Court.

Counsel raises five issues in the **Anders** brief:

[1.] Was the sentence imposed upon defendant/appellant by the lower court manifestly excessive?

[2.] Was the verdict against the weight of the evidence to such a degree that it shocks one's conscience?

[3.] Was there a violation of *Brady v. Maryland*, where medical records relating to treatment of one complainant were not provided to defendant/appellant prior to trial?

[4.] Is the competent evidence of record legally sufficient to support the convictions in this matter?

[5. Did the trial court err when it did not recuse itself?][2]

**Anders** Brief at 11.

"When faced with a purported **Anders** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw." **Commonwealth v. Wimbush**, 951 A.2d 379, 382 (Pa. Super. 2008) (citation omitted). In counsel's petition to withdraw and **Anders** brief, he states that these five issues are frivolous, and that there are no other, non-frivolous issues that Appellant could pursue herein. Accordingly,

[t]his Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant]. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).

Prior to withdrawing as counsel on a direct appeal under **Anders**, counsel must file a brief that meets the requirements established by our Supreme Court in **Santiago**. The brief must:

---

[2] Appellant neglected to include issue number five in the Statement of Questions Presented portion of his brief. However, the issue was listed in the Table of Contents and discussed in the body of the brief. **Anders** Brief at i; 56–57.

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Counsel also must provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

*Commonwealth v. Orellana*, 86 A.3d 877, 879-880 (Pa. Super. 2014).

After determining that counsel has satisfied these technical requirements of *Anders* and *Santiago*, this Court must then "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

In this case, counsel's *Anders* brief complies with the above-stated requirements. Namely, he includes a summary of the relevant factual and procedural history, he refers to portions of the record that could arguably support Appellant's claims, and he sets forth his conclusion that Appellant's appeal is frivolous. He also explains his reasons for reaching that

determination and supports his rationale with citations to the record and pertinent legal authority. Counsel also states in his petition to withdraw that he has supplied Appellant with a copy of his *Anders* brief. Additionally, he attached to his petition to withdraw a letter directed to Appellant in which he informed Appellant of the rights enumerated in *Nischan*, 928 A.2d at 353. Accordingly, counsel has complied with the technical requirements for withdrawal. We will now independently review the record to determine if Appellant's issues are frivolous, and to ascertain if there are any other non-frivolous issues he could pursue on appeal.

With regard to Appellant's first two issues, counsel concludes that these claims are waived based on prior counsel's failure to file a post-sentence motion raising them with the trial court. *Anders* Brief at 28–37. We agree. *See Commonwealth v. Griffin*, 65 A.3d 932, 938 (Pa. Super. 2013) (finding a weight of evidence claim waived where the appellant failed to comply with Pa.R.Crim.P. 607; the appellant did not raise the issue orally or in writing prior to sentencing, and did not raise it in a post-sentence motion); *Commonwealth v. Bromley*, 862 A.2d 598, 603 (Pa. Super. 2004) ("It is well settled that an [a]ppellant's challenge to the discretionary aspects of his sentence is waived if the [a]ppellant has not filed a post-sentence motion challenging the discretionary aspects with the sentencing court.") (citation omitted). Notwithstanding Appellant's waiver of these claims, we would still deem them frivolous if considered on appeal.

In regard to Appellant's weight of the evidence challenge, ordinarily such claims require review "of the exercise of [the trial court's] discretion, not of the underlying question of whether the verdict is against the weight of the evidence." **Commonwealth v. McClelland**, 204 A.3d 436, 447 (Pa. Super. 2019). In the instant matter, however, the trial court did not address the weight claim because Appellant did not file a post-sentence motion. Moreover, the judge who presided over Appellant's nonjury trial is no longer sitting in the Philadelphia County Court of Common Pleas.[3] In such instances, the Pennsylvania Supreme Court has carved an exception to the general rule that "a weight of the evidence claim is primarily addressed to the discretion of the judge who actually presided at trial." **Armbruster v. Horowitz**, 813 A.2d 698, 702 (Pa. 2002). The **Armbruster** Court held:

> [W]here a properly preserved weight of the evidence claim is raised on appeal and the judge who presided at trial failed to rule on the claim and is now permanently unavailable to do so, the claim must be reviewed by the appellate tribunal in the first instance. We are confident in the ability of our appellate courts to apply this exception appropriately, with an eye to the delicate balance that exists between the jury's exclusive role in assessing credibility, and our longstanding recognition of the power in courts to allow justice another opportunity to prevail when a verdict nevertheless shocks the judicial conscience. In this regard, we note that our appellate courts are well-familiar with weight claims. Although appellate review has been confined to an assessment of the trial judge's exercise of discretion, it obviously has been necessary to consider the proper role and contours of the weight of the evidence doctrine, in evaluating that exercise of discretion.

---

[3] The trial judge, Honorable Daniel D. McCaffery, was elected to this Court in November of 2019.

*Id.* at 705. Under such circumstances, our review is plenary, although we are confined to the "cold record of the trial proceedings" in conducting our review. *Commonwealth v. Izurieta*, 171 A.3d 803, 808 (Pa. Super. 2017) (citation and quotation omitted). We, therefore, apply the following standard:

> [T]he role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (citations and quotations omitted). Moreover, when adjudicating weight claims based solely on a cold record, we must do so "with an eye to the delicate balance that exists between the jury's exclusive role in assessing credibility, and our longstanding recognition of the power in courts to allow justice another opportunity to prevail when a verdict nevertheless shocks the judicial conscience." *Armbruster*, 813 A.2d at 705.

The evidence admitted at Appellant's trial consisted of the testimony from Commonwealth witnesses, Clark, Fenerty, and Philadelphia Police Officer Stephen Robinson, who apprehended Appellant. The defense did not present any witnesses, but during cross-examination, offered into evidence the transcript of Clark's preliminary hearing testimony and Fenerty's statement to the police on the night of the incident and pointed out inconsistencies between these former statements and the witnesses' trial testimony. Thus, Appellant's

- 8 -

weight of the evidence challenge is premised on the credibility of the witnesses.

As we are assuming the role of the trial judge in our review, this Court is "the sole arbiter of the credibility of each of the witnesses." ***Commonwealth v. Jacoby,*** 170 A.3d 1065, 1080 (Pa. 2017). "Issues of witness credibility include questions of inconsistent testimony. . . ." ***Id.*** (citation omitted). A fact-finder "is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." ***Id.*** (citation omitted). Further, "inconsistencies in eyewitness testimony are not sufficient to warrant a new trial on grounds that the verdict was against the weight of the evidence." ***Id.*** at 1081 (citation omitted).

Here, our review of the record indicates that the discrepancy between Clark's preliminary hearing testimony, wherein Clark testified that Appellant hit him "from the neck down to the waist," N.T. (Preliminary Hearing), 6/28/16, at 9, and his trial testimony, wherein Clark recounted that Appellant punched him "all over my body, on my face, my side, my ribs," N.T. (Trial), 12/8/16, at 15, was nominal and did not impugn Clark's credibility. As for the discrepancies between Fenerty's statement to the police and his trial testimony, Fenerty explained that when he reviewed the police report the day after the incident, he contacted a detective at the police station to point out

factual errors in the written report. N.T., 12/8/16, at 60.[4] According to Fenerty, the detective stated that he would alert the district attorney's office that the statement included some mistakes. *Id.* at 61. Approximately one week prior to the preliminary hearing, Fenerty called the district attorney's office, and he learned that a prosecutor had yet to be assigned to the case. A representative from the office eventually contacted Appellant and assured him that the attorney assigned to the case would be informed "that the statement needed to be supplemented." *Id.* at 62. On the morning of the preliminary hearing, Fenerty mentioned the need to supplement the statement, and the prosecutor advised him "to tell the truth and that's what I did." *Id.* at 63.

Appellant cross-examined Fenerty extensively regarding his prior inconsistent statement and introduced the police report as an exhibit. However, given Fenerty's explanation regarding the conflicts between the statement and his trial testimony, we can readily credit his testimony at trial notwithstanding his prior inconsistent statement. After assessing all of the evidence, we conclude that the verdict did not shock the sense of justice. Consequently, were we to reach it, Appellant's weight challenge fails.

Likewise, we would also discern no arguable merit to an excessive sentence claim, even if preserved below. The parties agreed at the sentencing

---

[4] The police report stated that Fenerty related that Appellant was carrying a bat when Fenerty observed him hitting Clark and that Fenerty disarmed Appellant. These statements were at odds with Fenerty's trial testimony. N.T., 12/8/16, at 42–44.

hearing that Appellant's prior record score was four, the offense gravity score was ten, and that the sentence for the aggravated assault conviction followed the standard Sentencing Guidelines, which recommended a minimum of forty-eight to sixty months confinement. N.T. (Sentencing), 2/17/17, at 6–7. Additionally, although the Commonwealth sought to proceed under the deadly weapon used matrix, the court did not apply the deadly weapon enhancement. *Id*. at 6, 22.

As to the crimes perpetrated against Fenerty, the court sentenced Appellant to a term of five to ten years of imprisonment for aggravated assault and a concurrent term of two to five years of imprisonment for PIC. The conviction for simple assault of Fenerty merged with aggravated assault for sentencing purposes. The court also imposed a period of reporting probation for five years for terroristic threats to run consecutively to the five to ten years imprisonment term. No further penalty was assessed for the REAP conviction. For the assault of Clark, Appellant received a sentence of two years of reporting probation for simple assault and five years of reporting probation for terroristic threats to run consecutive to the five to ten years of imprisonment. The trial court did not impose a further penalty for REAP. The aggregate term of imprisonment was five to ten years followed by a maximum of five years of probation. N.T. (Sentencing), 2/17/17, at 21–22.

A claim that a sentence within statutory limits is excessive is generally not sufficient to raise a substantial question, absent a claim that the sentence

violates a specific provision of the Sentencing Code or a fundamental norm underlying the sentencing process. *Commonwealth v. Dodge*, 77 A.3d 1263, 1271 (Pa. Super. 2013). However, even if Appellant's claim of excessiveness constituted a substantial question for our review, the record does not demonstrate any reason for this Court to overturn Appellant's sentence. The trial court sentenced Appellant within the standard range of the guidelines and well below the statutory maximum for aggravated assault. *See* 18 Pa.C.S. § 1103(1) (a person who has been convicted of a felony of the first degree may be sentenced to imprisonment for a term not more than twenty years.). The trial court also considered testimony from Fenerty, Appellant's work history, his familial responsibilities and support, the arguments of counsel, and Appellant's allocution. N.T. (Sentencing), 2/17/17, at 8–20.

Given this record, we would ascertain no abuse of discretion in the sentence imposed by the trial court, even if Appellant had preserved this issue for our review. Therefore, this issue is frivolous.[5]

_____

[5] To the extent Appellant could raise a claim of counsel's ineffectiveness for failure to file a post-sentence motion and plausibly preserving weight of the evidence and sentencing error issues, such claim is properly raised in a PCRA petition. Although Appellant previously filed a PCRA petition in this matter, he retains the right to file a new PCRA petition. We have held that if a petitioner's prior PCRA petition merely results in the granting of an appeal *nunc pro tunc*, a subsequent petition would not be considered a prior PCRA petition. *Commonwealth v. Lewis*, 718 A.2d 1262, 1263 (Pa. Super. 1998); *See also Commonwealth v. Karanicolas*, 836 A.2d 940, 944 (Pa. Super.

Appellant also seeks to argue that the Commonwealth committed a

***Brady v. Maryland***, 373 U.S. 83 (1963), violation by not providing the

defense with a copy of Fenerty's medical records detailing the injuries inflicted

by Appellant. Counsel first concludes that this claim is frivolous because

Appellant waived his right to assert this when he failed to object to the failure

to produce the records in the trial court. ***See*** Pa.R.A.P. 302(a) ("Issues not

raised in the lower court are waived and cannot be raised for the first time on

appeal."). Alternatively, counsel notes that Appellant would not be able to

prove that the Commonwealth committed a ***Brady*** violation even if he had

not waived this claim. For the reasons stated *infra*, we agree with counsel

that Appellant's ***Brady*** claim is frivolous, and we need not consider whether

he waived this issue for our review.

> Our Supreme Court has stated that,
>
> in order to establish a ***Brady*** violation, a defendant must show
> that: (1) evidence was suppressed by the state, either willfully or
> inadvertently; (2) the evidence was favorable to the defendant,
> either because it was exculpatory or because it could have been
> used for impeachment; and (3) the evidence was material, in that
> its omission resulted in prejudice to the defendant. ***See***
> ***Commonwealth v. Lambert***, 584 Pa. 461, 471, 884 A.2d 848,
> 854 (2005); ***Commonwealth v. Collins***, 585 Pa. 45, 68, 888
> A.2d 564, 577–78 (2005). However, "[t]he mere possibility that

---

2003) (stating, "When a petitioner is granted a direct appeal *nunc pro tunc* in
his first PCRA petition, a subsequent PCRA petition is considered a first PCRA
petition for timeliness purposes.").

- 13 -

an item of undisclosed information **might** have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." **Commonwealth v. Chambers**, 570 Pa. 3, 29, 807 A.2d 872, 887 (2002) (citation omitted and emphasis added). Rather, evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." **Id.** at 29, 807 A.2d at 887–88.

**Commonwealth v. Willis**, 46 A.3d 648, 656 (Pa. 2012) (emphasis in original; internal citation omitted). Moreover, the burden rests with the defendant to "prove, by reference to the record, that evidence was withheld or suppressed by the prosecution," **see Commonwealth v. Paddy**, 15 A.3d 431, 451 (Pa. 2011), and the withheld evidence must have been in the "exclusive control of the prosecution at the time of trial." **Commonwealth v. Haskins**, 60 A.3d 538, 547 (Pa. Super. 2012).

There is nothing in the record before us demonstrating that the Commonwealth possessed Fenerty's medical records. Notably, the records were not introduced into evidence at the trial. Furthermore, Fenerty testified that the assistant district attorney rebuffed his offer to authorize release of the records. N.T. (Trial), 12/8/16, at 75. While the prosecutor indicated to Fenerty that the Commonwealth could procure the records without his authorization, there is no indication that the Commonwealth either requested or received Fenerty's medical records. **Id.**

Based on this record, Appellant has failed to demonstrate that the Commonwealth possessed Fenerty's medical records, let alone that the

- 14 -

record's contents were favorable to his defense and that they were suppressed by the Commonwealth either willfully or inadvertently. Accordingly, even had Appellant preserved this claim for our review, we would deem it frivolous.

We next determine whether Appellant's challenge to the sufficiency of the evidence underlying his convictions is wholly frivolous. The standard we apply in reviewing the sufficiency of the evidence is whether:

> viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Adams*, 39 A.3d 310, 323 (Pa. Super. 2012) (quoting *Commonwealth v. Brown*, 23 A.3d 544, 559–560 (Pa. Super. 2011) (*en banc*)).

Initially we observe that Appellant was convicted of the following related offenses: one count of the aggravated assault of Fenerty, two counts of simple

assault[6] premised on the attacks of Clark and Fenerty, and two counts of REAP, one for recklessly endangering Clark and one for recklessly endangering Fenerty, as well as two counts of terroristic threats and one count of PIC.

A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

A person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S. § 2701(a)(1). Additionally, "bodily injury" constitutes "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301

Appellant was convicted of two counts of REAP. "A person commits [REAP] if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. REAP

---

[6] In his **Anders** brief, counsel does not discuss whether the Commonwealth's evidence supported the convictions of simple assault, terroristic threats, and REAP stemming from Appellant's attack of Clark. We review that evidence as required by our obligation to independently review the record "to discern if there are any additional, non-frivolous issues overlooked by counsel." **Flowers**, 113 A.3d at 1250.

"is a crime directed against reckless conduct entailing a serious risk to life or limb out of proportion to any utility the conduct might have." ***Commonwealth v. Vogelsong***, 90 A.3d 717, 719 (Pa. Super. 2014) (citation omitted). "A person acts in a reckless manner when he consciously disregards a substantial and unjustifiable risk." ***Id.*** (citing 18 Pa.C.S. § 302(b)(4)).

Reckless endangerment and simple assault are lesser-included offenses of aggravated assault, and evidence sufficient to prove aggravated assault is sufficient to prove those offenses as well. ***Commonwealth v. Brown***, 605 A.2d 429, 432 (Pa. Super. 1992) (finding that the elements of REAP and simple assault are met by a conviction for aggravated assault); ***Commonwealth v. Smith***, 956 A.2d 1029, 1036 (Pa. Super. 2008) ("Reckless endangerment is a lesser included offense of aggravated assault and where the evidence is sufficient to support a claim of aggravated assault it is also sufficient to support a claim of recklessly endangering another person.").

The Commonwealth presented evidence sufficient to establish every element of aggravated assault. Appellant threatened to kill Fenerty and swung a baseball bat toward Fenerty's head. When Fenerty attempted to block the bat with his arm, Appellant repeatedly struck him. N.T. (Trial), 12/8/16, at 52–53. Fenerty eventually went to the hospital where it was determined that he had a deeply bruised arm that required draining of the elbow. He continues to experience pain. ***Id.*** at 54.

- 17 -

A baseball bat, as employed by Appellant toward Fenerty's head, is considered a deadly weapon. ***Commonwealth v. Nichols***, 692 A.2d 181, 184 (Pa. Super. 1991) (citation omitted). Use of a deadly weapon on a vital part of the body is sufficient to establish intent to cause serious bodily harm. ***Id.*** Although the bat did not make contact with Fenerty's head, the fact that Appellant could have used the bat more effectively does not negate the inference that it was intended to be used to cause serious bodily injury. ***Commonwealth v. Rightley***, 617 A.2d 1289, 1296 (Pa. Super. 1992). This evidence, viewed in a light most favorable to the Commonwealth, was sufficient to convict Appellant of the counts of aggravated assault, simple assault, and REAP regarding the incident involving Fenerty.

There was also sufficient evidence to uphold Appellant's convictions of REAP and simple assault regarding his interaction with Clark. At trial, Clark testified that Appellant approached him and Connelly when they were sitting on a step drinking beer. N.T. (Trial), 12/8/16, at 11. Appellant struck Connelly in the face a number of times, after which Connelly and Clark attempted to extricate themselves from the situation. Clark is elderly and disabled and was unable to move away quickly. ***Id.*** at 13. Appellant followed and continued to hit Connelly and then turned his attention to Clark. Appellant punched Clark with closed fists more than thirty times. ***Id.*** at 14–15. Concerned that he had a broken rib, Clark sought medical treatment the next day. It was determined that Clark's ribs, although not broken, were badly

bruised. Clark averred that he suffered pain for three or four days following the incident. *Id.* at 20.

Based on the aforementioned, the evidence was sufficient to prove that Appellant had the *mens rea*, *i.e.*, recklessness, necessary to convict him of REAP. *See Commonwealth v. Vogelsong*, 90 A.3d at 719 (citation omitted) ("A person acts in a reckless manner when he consciously disregards a substantial and unjustifiable risk."). Specifically, Clark's testimony demonstrated that Appellant punched him continually with closed fists while Clark was unusually vulnerable and unable to get away. Therefore, Appellant consciously disregarded a known risk of great bodily injury to another person.

Having found the evidence was sufficient to support Appellant's conviction for recklessly endangering Clark, we conclude the evidence was also sufficient to support Appellant's conviction for the simple assault of Clark, which this Court has expressly held is a lesser-included offense of REAP. *See Commonwealth v. Brunson*, 938 A.2d 1057, 1061 (Pa. Super. 2007). As such, Appellant's conviction for simple assault must stand.

Appellant was also convicted of two counts of terroristic threats. A person commits the crime of terroristic threats "if [he] communicates, either directly or indirectly, a threat to [] commit any crime of violence with intent to terrorize another. . . ." 18 Pa.C.S. § 2706(a)(1). To convict a defendant of terroristic threats, "the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was

communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." *Commonwealth v. Beasley*, 138 A.3d 39, 46 (Pa. Super. 2016) (citations omitted).[7]

The Commonwealth presented evidence sufficient to establish each element of terroristic threats perpetrated against both Clark and Fenerty. Clark testified that when Appellant was beating him, he noticed that Appellant had a satchel strapped across his body. Appellant yelled that he had a gun and "was going to shoot somebody." N.T. (Trial), 12/8/16, at 16. When some neighbors implored Appellant to leave Clark alone, Appellant screamed, "I'll shoot him. I'll shoot him." *Id.* at 17. Appellant continued to threaten to shoot someone, reached into his satchel, and stated that he had a gun. *Id.*

Fenerty recounted that when he approached Appellant and restrained him from inflicting further injury on Clark, Appellant stared at Fenerty and screamed, "I'm gonna kill you." N.T. (Trial), 12/8/16, at 43. Appellant repeated the threat on at least two other occasions. *Id.* Fenerty then testified that Appellant pulled off his satchel, held it up, and said: "I'm going to blow you f***ing away. Like he's got a gun and he's pointing it at me." *Id.* at 44.

---

[7] We take issue with counsel's summary assessment of the sufficiency of the evidence to support Appellant's terroristic threats convictions without providing support. Counsel simply avers that "[i]f believed, Appellant's threat to kill Fenerty is sufficient to sustain the conviction for terroristic threats." *Anders* Brief at 52.

This evidence, when viewed in the light most favorable to the Commonwealth, demonstrates that Appellant made threats to commit crimes of violence with the intent to terrorize Clark and Fenerty. Accordingly, the evidence was sufficient to establish terroristic threats, and Appellant's challenge to this conviction is meritless.

Finally, we review the sufficiency of the evidence in support of Appellant's conviction of PIC. A person is guilty of this offense "if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). An instrument of crime can be anything specially made or adapted for criminal use, or "anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses [the instrument] may have." 18 Pa.C.S. § 907(d).

Here, the evidence established that Appellant swung a baseball bat towards Fenerty's head and struck him in the arm with the bat. N.T. (Trial), 12/8/16, at 46. A baseball bat, as employed by Appellant toward Fenerty's head, is considered a deadly weapon. *See Nichols*, 692 A.2d at 184 (a baseball bat, when swung at the head, can be a deadly weapon); *see also Commonwealth v. McCullum*, 602 A.2d 313 (Pa. 1992) ("An ax, a baseball bat, an iron bar, a heavy cuspidor, and even a bedroom slipper have been held to constitute deadly weapons under varying circumstances."). Thus, the evidence established that Appellant possessed an instrument of crime with intent to employ it criminally. We therefore agree with counsel that

Appellant's challenge to his PIC conviction, as with each of Appellant's sufficiency of the evidence claims, would be a frivolous issue to raise on appeal.

Appellant's final argument is that the trial court erred when it did not recuse itself. Prior to Fenerty's testimony, the trial court acknowledged *sua sponte* that the court had met Fenerty and knew members of Fenerty's family. N.T. (Trial), 12/8/16, at 38–39. After the court revealed its familiarity with Fenerty, defense counsel stated: "On the record. That's fine. I have no objection, Your Honor, and I have no motion with regard to that." *Id.* at 39. Accordingly, the issue of the trial court's recusal was not preserved for judicial review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[8]

Even if not waived, the record does not support a conclusion that the trial court was required to recuse itself in this instance. "The party who asserts that a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal." *Commonwealth v. Darush*, 459 A.2d 727, 731 (Pa. 1983) (citation omitted).

---

[8] As with Appellant's weight of the evidence and sentencing error issues, *see* n.4 *supra*, an allegation that counsel was ineffective for failing to request the trial court's recusal could feasibly be raised in a PCRA petition. *See Karanicolas*, 836 A.2d at 944.

"The acquaintance between a judge and a victim of a crime, is not, in itself, sufficient to require the trial judge to recuse." ***Commonwealth v. Perry***, 364 A.2d 312, 318 (Pa. 1976). Because the relationship itself does not disqualify the judge, we look beyond the connection to the victim "to determine if any prejudice has actually accrued." ***Id.***

After review, there is no showing that the trial court exhibited favorable bias towards Fenerty or assessed his credibility positively without justification. Accordingly, the issue is frivolous.

In summary, our independent review of the record confirms counsel's assertion that Appellant cannot raise any non-frivolous issues in this appeal. Accordingly, we affirm the judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/20